1       UNITED STATES DISTRICT COURT
2        DISTRICT OF PUERTO RICO
3
4

UNITED STATES OF AMERICA,

   Plaintiff,       Criminal No. 3:15-cr-00075 (JAF)

   v.

OSCAR MARTINEZ-HERNANDEZ,
et al.,

   Defendants.

5
6        **MEMORANDUM ORDER**

7         **Introduction**

8   This court is in a very unique position where there is little, if any, case law

9 offering pertinent guidance.  Here, there are six defendants potentially facing the death

10 penalty, five of them have moved this court regarding their conditions of confinement.

11 Each of the defendants is currently housed in the special housing unit at various BOP

12 facilities.  Four of the five moving defendants are serving sentences for other offenses,

13 and all are currently located outside the District of Puerto Rico.

14   Each defendant complains of his conditions of confinement, as well as his

15 placement in the special housing unit (the "SHU"), and none have filed separate actions

16 under 42 U.S.C. § 1983, habeas corpus (28 U.S.C. § 2241), or a *Bivens* action (*Bivens v.*

17 *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971))

18 which, if filed in the proper jurisdiction, would have put their respective wardens on

19 notice of the complaints.

1    The parties have provided ample case law regarding pretrial detainees' rights. The

2    matter before the court has been presented not as a proper civil action, but rather a motion

3    seeking this court's intervention with BOP policy and procedures. It behooves the court

4    to remind counsel that even though the court may strongly suggest an action to the BOP,

5    absent some jurisdiction over the prison at issue – such as the authority this court has

6    under 18 U.S.C. § 3142(i)(3) to protect a defendant's access to counsel, the operation of

7    federal prisons is outside our Judicial province and any court suggestion to the BOP is

8    just a suggestion.

9    The Supreme Court has explained that "when an institutional restriction infringes

10    a specific constitutional guarantee, ... the practice must be evaluated in the light of the

11    central objective of prison administration, safeguarding institutional security." *Bell v.*

12    *Wolfish*, 441 U.S. 520, 546–47 (1979). "[M]aintaining institutional security and

13    preserving internal order and discipline are essential goals that may require limitation or

14    retraction of the retained constitutional rights of both convicted prisoners and pretrial

15    detainees." *Id*. at 546. "Prison administrators ... should be accorded wide-ranging

16    deference in the adoption and execution of policies and practices that in their judgment

17    are needed to preserve internal order and discipline and to maintain institutional

18    security." *Id.* at 547. "[J]udicial deference is accorded not merely because the

19    administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of

20    his domain than the reviewing judge, but also because the operation of our correctional

21    facilities is peculiarly the province of the Legislative and Executive Branches of our

22    Government, not the Judicial." *Id*. at 548.

1    This matter is before the court on five of the Defendants' motions concerning the

2    conditions of their present detention.  The motions are briefly summarized as follows:

3    Defendant Oscar Martínez-Hernández has been held in segregated housing since

4    March 6, 2013 and is currently incarcerated at USP Coleman I.  He argues that his

5    prolonged confinement in the special housing unit violates his Fifth Amendment due

6    process right not to be arbitrarily subjected to such confinement; his Sixth Amendment

7    right to counsel and to assist in the preparation of his defense; and his Eighth Amendment

8    right to develop mitigation evidence while he awaits trial. (ECF No. 336).

9    Defendant Angel D. Ramos-Cruz is located in a special housing unit at USP

10   Coleman II and argues that his confinement violates his Sixth and Eighth Amendment

11   rights to develop mitigating evidence. Defendant Ramos also challenges specific

12   limitations of his conditions: Attorney-client in-person visits, fifteen minutes per month

13   to telephone his family and friends, access to the law library and electronic equipment for

14   the use of discovery review, daily access to outdoor recreation, and access to educational

15   training, vocational training, and worship services. (ECF No. 395).

16   Defendant Juan Quiñones-Meléndez is located in the special housing unit at

17   Coleman II. (ECF No. 772). He seeks relief including transfer to general population,

18   access to video/audio equipment, access to law library, increased social telephone

19   communication, access to books in Spanish, expanded attorney-client visitation times,

20   appropriate medical care, and transfer to Puerto Rico as trial approaches.  (ECF No. 772).

21   Defendant Orlando Mojica-Rodríguez is located in a special housing unit at FDC

22   Miami awaiting trial in the instant matter.  He seeks this court's intervention regarding

1   aspects of the conditions of his confinement.  Defendant Mojica-Rodríguez alleges that

2   his prolonged segregation violates his Sixth Amendment right to counsel and access to

3   legal materials.  Defendant Mojica-Rodríguez requests that this court order that he be

4   relocated to MDC-Guaynabo in Puerto Rico. (ECF No. 471).

5         Defendant Jayson Rodríguez-González argues that he was impermissibly placed in

6   the SHU at USP Atlanta in violation of his due process rights. (ECF No. 793). He also

7   argues that the conditions of his confinement violate his right to counsel and his ability to

8   participate in his defense and collection of mitigation evidence.  (ECF No. 793).

9         At the court's request, the Government responded to the Defendants' arguments in

10  a single response which highlights the reasons that the BOP placed each of the

11  Defendants in the SHU while awaiting trial.  (ECF No. 394).  Upon review of the parties'

12  briefs, accompanying documentation, and the relevant case law, the court only GRANTS

13  the relief explained below.

14                        **Facts and Relevant Procedural History**

15        On February 26, 2013, Lieutenant Osvaldo Albarati-Casañas ("Lieutenant

16  Albarati"), a Federal Bureau of Prisons Correctional Officer at the Metropolitan

17  Detention Center in Guaynabo, Puerto Rico ("MDC-Guaynabo") was gunned down while

18  driving home from work along a busy highway in the northern municipality of Bayamón,

19  Puerto Rico. On January 28, 2015, a federal grand jury in the District of Puerto Rico

20  returned a six-count indictment charging nine individuals for the murder of Lieutenant

21  Albarati:  Count One – Murder of a Federal BOP Correctional Officer; Count Two –

22  Conspiracy to Commit Murder; Count Three – Murder for Hire; Count Four – Murder for

1    Hire; Count Five – Carry and Use of a Firearm in Relation to a Crime of Violence; and

2    Count Six – Carry and Use of a Firearm in Relation to a Crime of Violence (Murder for

3    Hire). Six of the charged individuals are eligible for the death penalty for their alleged

4    roles in the murder of Lieutenant Albarati: Oscar Martínez-Hernández aka "Cali,"

5    Angel D. Ramos-Cruz aka "Api," Miguel Díaz-Rivera aka "Bolo," Juan Quiñones-

6    Meléndez aka "El Manco," Orlando Mojica-Rodríguez aka "Yogui," and Jayson

7    Rodríguez-González aka "Gonzo."

8         According to the indictment, while incarcerated, Defendants Martínez-Hernández,

9    Ramos-Cruz, and Díaz-Rivera solicited and financed the plan to murder Lieutenant

10    Albarati. Defendants Quiñones-Meléndez and Mojica-Rodríguez provided a vehicle, four

11    Glock .40 caliber fully automatic pistols (machine guns) and a cellular phone to

12    Defendants Rodríguez-González, Rosado-Rosado, and Rosario-de-León to murder

13    Lieutenant Albarati-Casañas. Defendant Velázquez-Vázquez served as driver to Mojica-

14    Rodríguez and participated in the plan to murder the victim.

15         During the time leading up to the murder, Defendant Martínez-Hernández was

16    housed at MDC-Guaynabo in the SHU.  Defendant Ramos-Cruz was at MDC-Guaynabo

17    in general population, with the exception of a period of time between January 14, 2013,

18    and February 16, 2013, during which he was housed in the SHU.  Defendant Díaz-Rivera

19    was also at MDC-Guaynabo leading up to Lieutenant Albarati's murder. He was housed

20    intermittently in the SHU and general population.  From February 8, 2013, to February

21    13, 2013, he was located in the SHU and was reassigned to the SHU on February 27,

22    2013.

1    Defendant Martínez-Hernández has been assigned to the SHU at various facilities,

2    with minor exceptions, since January of 2012.   Defendant Ramos-Cruz has been

3    incarcerated with the BOP since December 19, 2012.   He has been housed in the SHU

4    from January 14, 2013, to February 16, 2013, and again from January 29, 2015, to

5    present.   Defendant Díaz-Rivera has been assigned to the SHU, with minor exceptions,

6    since December 10, 2011.  Defendant Quiñones-Meléndez has been incarcerated with the

7    BOP since August 21, 2013.  He was transferred to the SHU on February 21, 2014, and

8    has remained in the SHU since, with the exception from June 25, 2014, to January 29,

9    2015.  Defendant Mojica-Rodríguez has been incarcerated since August 21, 2013.  He

10   was assigned to the SHU on January 29, 2015.  Defendant Rodríguez-González has been

11   incarcerated with the BOP since January 22, 2014.  He has been assigned to the SHU

12   since May 27, 2014.

13    Initially, each of the six death-penalty-eligible defendants jointly expressed their

14   concerns regarding the effect that their placement in the SHU had on their abilities to

15   assist in their defense.   (ECF No. 222). The court quickly followed with an order

16   discussing its intent to communicate directly with the BOP facilities in order to alleviate

17   some of the areas of concern. (ECF No. 255).  In response, the BOP appointed Jorge L.

18   Matos, Supervisory Attorney Advisor at MDC-Guaynabo, as the point of contact to

19   address the issues concerning ECF No. 255 and any future issues in the case relating to

20   the Defendants' incarceration pending trial. (*See* ECF No. 263).

1    Since Mr. Matos's appointment as the BOP liaison, five of the six death-penalty-

2    eligible defendants have filed additional motions requesting the court's intervention with

3    their conditions of confinement at their respective facilities.

4    **1. Defendant Oscar Martínez-Hernández**

5    On January 4, 2012, Martínez-Hernández was arrested by federal authorities in

6    Venezuela and extradited to the United States in connection with federal criminal case

7    11-241-10 (DRD), disposed of in the District of Puerto Rico. On January 25, 2012,

8    Martínez-Hernández was brought before U.S. Magistrate Judge Marcos E. López for the

9    Initial Appearance Hearing, at which time he was ordered temporarily detained.   On

10   February 9, 2012, the Arraignment and Detention Hearing was held and the court ordered

11   Martínez-Hernández detained pending further proceedings. He was remanded to MDC-

12   Guaynabo, Puerto Rico. Prior to February 27, 2013, Martínez-Hernández had been

13   subject to disciplinary sanctions at MDC-Guaynabo which resulted in his temporary

14   placement in the SHU.  On February 27, 2013, Martínez-Hernández was transferred from

15   the general population of MDC-Guaynabo to the SHU. On March 5, 2013, Martínez-

16   Hernández was sentenced to a 300-month prison term, to be followed by ten years of

17   supervised release, for the 2011 matter.

18   On March 6, 2013, Martínez-Hernández was transferred to USP Atlanta and again

19   placed in the SHU. He received disciplinary sanctions at USP Atlanta resulting in a

20   temporary loss of certain privileges.   On or about September 3, 2014, Martínez-

21   Hernández was returned to Puerto Rico in connection with a supervised release

22   revocation proceeding related to U.S. District Court for the District of Puerto Rico case

1    number 3:94-cr-00214 (GAG).   While in Puerto Rico, he was housed in MDC-

2    Guaynabo's SHU section. On or about November 2014, after his final revocation hearing

3    was held on November 3, 2014 (see *United States v. Martínez-Hernández*, 3:94-cr-00214,

4    ECF No. 71 (D. Puerto Rico Nov. 3, 2014)), Martínez-Hernández was transferred back to

5    USP Atlanta, where his SHU placement continued. On or about December 19, 2014,

6    Martínez-Hernández was transferred to BOP Oklahoma, a transfer facility, and on

7    December 31, 2014, he was transferred to USP Coleman I, where he remains in

8    administrative segregation to this day.

9    **2. Defendant Angel D. Ramos-Cruz**

10         On June 21, 2013, in an unrelated matter, Defendant Angel D. Ramos-Cruz was

11    sentenced to 135 months to be served consecutive to the sentences being imposed in two

12    Florida State Court criminal cases (FLA2013G0088 and FLA2013G0089).   (*United*

13    *States v. Ramos-Cruz*, 3:12-cr-00200-26 (JAF), ECF No. 1071 (D. Puerto Rico June 21,

14    2013). He is currently serving his sentence at USP Coleman II in Sumterville, Florida.

15    Defendant Ramos-Cruz complains that the conditions of his confinement in the SHU

16    impede his right to assist in his defense and to develop and present mitigation evidence

17    on his behalf.

18         Defendant Ramos-Cruz requests that the attorney-client in-person visits be

19    allowed Monday through Saturday from 8:00 a.m. to 3:00 p.m. and from 5:00 p.m. to

20    8:00 p.m., that he be allowed the standard 300 minutes per month to communicate with

21    his family, that he be given access to a law library, that he is able to review the discovery

1   in this case, including the DVD's and CD's, that he be provided daily access to outside

2   recreation, and that he be allowed access to educational, vocational, and worship services.

3   **3.  Defendant Juan Quiñones-Meléndez**

4   On March 7, 2014, Defendant Juan Quiñones-Meléndez was sentenced to two

5   consecutive 60-month sentences for unrelated convictions involving illegal possession of

6   a machine gun.  (*United States v. Quiñones-Meléndez*, 3:13-cr-00468 (JAF), ECF No. 40

7   (D. Puerto Rico Mar 7, 2014); *United States v. Quiñones-Meléndez*, 3:13-cr-00590-1

8   (JAF), ECF No. 95 (D. Puerto Rico Mar 7, 2014).  He is currently incarcerated in the

9   SHU at USP Coleman II, in Sumterville, Florida.

10  Defendant Quiñones-Meléndez argues that his confinement in the SHU at USP

11  Coleman-II affects his Sixth Amendment right to counsel, his access to appropriate

12  medical and psychological care, his ability to prepare to face the legal proceedings

13  against him, his ability to effectively develop and present mitigating evidence, and his

14  access to legal materials.

15  Defendant Quiñones-Meléndez complains that USP Coleman II does not have the

16  equipment necessary for him to view much of the 700+ hours of videotaped evidence in

17  this case.  Defendant Quiñones-Meléndez's time with his attorneys is limited to between

18  the hours of 9:00 a.m. and 3:00 p.m.

19  While in the SHU, Defendant Quiñones-Meléndez is allowed one fifteen-minute

20  phone call per month to his family. He speaks only Spanish and is unable to communicate

21  with the guards or even read from the books offered from the reading cart as there are

22  few books offered in Spanish.  The temperature in the SHU is generally kept in the 50's

1    and contributes to many of Defendant Quiñones-Meléndez's medical issues, including

2    headaches. He is unable to view much of the evidence in the case to assist in his defense

3    because the formats of the files are in an unreadable format.

4          Defendant Quiñones-Meléndez requests a transfer from the SHU to general

5    population, that his phone privileges be extended to 300 minutes per month, that he be

6    given access to a law library, that the Government provide the video and audio evidence

7    in a viewable format, that he be given access to use the equipment to view and listen to

8    the evidence in order to prepare for the consultations with his attorneys, that attorney

9    visiting hours be extended until 9:00 p.m. approximately four times a month, and that he

10   be transferred to MDC-Guaynabo as the trial date approaches.

11      **4.  Defendant Orlando Mojica-Rodríguez**

12         Defendant is housed in FDC Miami, where he is serving a 60-month sentence that

13   he received in an unrelated matter on January 29, 2014. (*United States v. Mojica-*

14   *Rodríguez*, 3:13-cr-00590-2, ECF No. 84 (D. Puerto Rico Jan 29, 2014).   Defendant

15   Mojica-Rodríguez began serving his sentence in general population, but was moved to

16   the SHU in January of 2015 after his indictment in the instant matter.

17         Defendant Mojica-Rodríguez argues that his placement in the SHU violates his

18   Sixth Amendment right to receive effective assistance of counsel.  Defendant argues that

19   the distance between him and his lawyers and him and his family inhibit his ability to

20   assist in his defense and prepare mitigation evidence.  Learned counsel's office and home

21   are in Baltimore, Maryland, and local counsel is in Puerto Rico. His mitigation specialist

22   is in Maryland. Moreover, all of his family members reside in Puerto Rico. Mr. Mojica-

1    Rodríguez is restricted to one fifteen-minute phone call per week to his family. Counsel

2    have attempted to set up weekly phone calls between Defendant and the defense team.

3    The officers in the SHU speak little Spanish and Defendant Mojica-Rodríguez speaks

4    almost no English, thus, he is unable to communicate with the personnel.  Additionally,

5    Defendant Mojica-Rodríguez has no access to a law library or his discovery materials.

6          Defendant Mojica-Rodríguez requests to be transferred to MDC-Guaynabo so that

7    he is better enabled to assist his counsel in preparing his defense and mitigation evidence.

8          **5.  Defendant Jayson Rodríguez-González**

9          Prior to the return of the indictment in this matter, Defendant Jayson Rodríguez-

10   González was housed at a detention facility in Georgia as a pretrial detainee awaiting trial

11   on two unrelated indictments in this court.  *See United States v. Rodríguez-González*,

12   3:14-cr-00042 (DRD) (D. Puerto Rico) and *United States v. Rodríguez-González,* 3:14-

13   cr-00056-1 (JAF) (D. Puerto Rico).  As of the date of this Order, both of these matters are

14   still pending disposition.  Following his arraignment and detention hearing in this case,

15   Defendant Rodríguez-González was placed in the SHU at FDC Tallahassee to await his

16   trial.  He then moved this court to assist in his transfer from FDC Tallahassee to FDC

17   Miami in order for his counsel to more easily travel to visit him to prepare his defense.

18   (ECF No. 257).   Attorney Matos then facilitated Defendant Rodríguez-González's

19   transfer to USP Atlanta.  Since May 27, 2015, Defendant Rodríguez-González has been

20   located in the SHU at USP Atlanta in segregated housing as a pretrial detainee. (ECF No.

21   793).

1    Defendant Rodríguez-González complains that he is required to meet with his

2    counsel while in restraints which are sometimes so tight they inhibit his ability to sit

3    down comfortably.  Counsel for Rodríguez-González have encountered various hurdles

4    when they arrive at USP Atlanta to meet with their client.  On one occasion, their meeting

5    was conducted through video monitor and a telephone line for sound. On another

6    occasion, the USP Atlanta personnel interrupted Defendant's meeting with his expert to

7    move him to a non-contact visiting area.  Counsel report having difficulties on nearly

8    every visit to USP Atlanta.  Such difficulties include personnel at the Visitor's Entrance

9    creating "obstacles" to counsel's entrance into the facility with laptops for the purpose of

10   viewing discovery materials.  Additionally, there are no video teleconference facilities

11   available at USP Atlanta.  Instead, Defendant and his counsel view each other through a

12   video system but speak to each other using a telephone line that indicates all calls are

13   recorded.

14   Defendant Rodríguez-González argues that his continued confinement in the SHU

15   violates his right to due process, a fair trial, and effective assistance of counsel.

16   Additionally, the distance between USP Atlanta and Puerto Rico makes it impossible for

17   his family to visit him, and the allowance of only one fifteen-minute phone call per

18   month prevents Defendant Rodríguez-González from developing mitigation evidence.

19   In sum, the defendants raise a litany of issues regarding confinement ranging from

20   access to leisure reading to access to medical appointments.  As explained below, *few* of

21   these issues affect constitutional rights that this court has jurisdiction to enforce in the

22   criminal case before us.

Civil No. 3:15-cr-00075 (JAF)                                                                  -13-

1                                          **Jurisdiction**

2          Defendants challenge the conditions of their confinement in the SHU at their

3    respective facilities.   In particular, Defendants challenge their classifications for

4    placement in the SHU, specific restrictions or limitations of their confinement, and that

5    their confinements violate their Fifth and Sixth Amendment rights to counsel, to legal

6    materials, and to assist in their defenses and mitigation efforts.   Defendants filed these

7    motions within the pending criminal matter and not as separate civil actions under habeas

8    corpus, 42 U.S.C. § 1983, or *Bivens*.   We must first discuss the extent of our jurisdiction

9    over the pending matters.

10         Each of the moving Defendants, with the exception of Defendant Rodríguez-

11   González, is awaiting trial while serving out previously-disposed sentences for unrelated

12   convictions. Without deciding which of Defendants' concerns would be properly brought

13   under § 1983, habeas corpus, *Bivens*, or some combination thereof, the court recognizes

14   that it does not have jurisdiction over a large group of Defendants' concerns. A number

15   of the Defendants' concerns, *e.g.*, the confinement to the SHU, the length or amount of

16   telephone calls to friends/family, daily access to outdoor recreation, and access to

17   educational training, vocational training, and worship services, are not properly before

18   this court. *See United States v. Arnaout*, No. 02 CR 892, 2002 WL 31744654, at *1 (N.D.

19   Ill. Dec.6, 2002) (Absent any evidence that the conditions of confinement interfere with

20   pretrial detainee's right to counsel, movant may only challenge his placement in

21   administrative detention through a civil action.).

Civil No. 3:15-cr-00075 (JAF)                                                    -14-

1       Each of the moving Defendants is confined outside the District of Puerto Rico,

2    and each of their motions contains concerns regarding the conditions of confinement *at*

3    *their present detention facilities.* The proper course of action to challenge these

4    conditions of confinement would be to file a civil law suit in the judicial district where

5    the prison is located. See 28 U.S.C. § 1391(b); *Braden v. 30th Judicial Circuit Court*, 410

6    U.S. 484, 494-95 (1973) (A court has jurisdiction to entertain a petition for habeas corpus

7    relief whenever it can serve process on the custodian.); *Rumsfeld v. Padilla*, 542 U.S.

8    426, 443 (2004) ("[T]he plain language of [28 U.S.C. § 2241(a) ] confirms the general

9    rule that for core habeas petitions challenging present physical confinement, jurisdiction

10   lies in only one district: the district of confinement."); *Vasquez v. Reno*, 233 F.3d 688,

11   690 (1st Cir. 2000) ("the court issuing the writ must have personal jurisdiction over the

12   person who holds the petitioner in custody") (citations omitted).  Even if this court found

13   that a classification or specific restriction violates a particular Defendant's constitutional

14   rights, this court does not have the authority, under the framework presented, to *require*

15   any particular remedy other than that which directly relates to a defendant's ability to

16   prepare his defense in the instant criminal action.

17       Though the government consents to this court's jurisdiction over the issues

18   contained in the Defendants' motions, this court does not have jurisdiction over

19   Defendants' concerns that do not interfere with their right to counsel in this case.  This

20   court recognizes that requiring that the Defendants file separate claims in their respective

21   jurisdictions will delay resolution of Defendants' concerns.  As regrettable as it is that we

22   must decline to analyze the majority of Defendants' concerns, in particular the concerns

1  regarding the effect that continuous placement in segregation has on an individual's

2  psychological and emotional state, following this course is the only way for Defendants

3  to move forward.

4         Finally, to the extent that Defendants' motions raise concerns regarding their

5  placement at the SHU while at MDC-Guaynabo, which is within this court's jurisdiction,

6  such complaints are now moot since Defendants have been transferred out of MDC-

7  Guaynabo. *See Ford v. Bender*, 768 F.3d 15, 29 (1st Cir. 2014) ("A prisoner's challenge

8  to prison conditions or policies is generally rendered moot by his transfer or release.").

9                               **Defendants' Access To Counsel**

10        We now turn to Defendants' complaints that their limitations in the SHU deprive

11 them of their right to counsel. Although this court will not assume jurisdiction over a

12 number of the Defendants' concerns (*e.g.*, the confinement to the SHU, the length or

13 amount of telephone calls to friends/family, access to law library, daily access to outdoor

14 recreation, and access to educational training, vocational training, and worship services),

15 it may remain actively involved in the protection of the Defendants' right to counsel. A

16 pretrial detainee may challenge conditions of his confinement that affect his right to

17 counsel before the judge presiding over the underlying criminal case. *See Falcon v.

18 United States Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir. 1995). Thus, we now turn to

19 Defendants' concerns that relate to their ability to prepare a defense and mitigation

20 evidence in the instant matter.

21        Defendants present the issue as concerning their Sixth Amendment right to

22 counsel; the principle of judicial restraint, however, must be addressed. "The Court will

1    not pass upon a constitutional question although properly presented by the record, if there

2    is also present some other ground upon which the case may be disposed of. This rule has

3    found most varied application. Thus, if a case can be decided on either of two grounds,

4    one involving a constitutional question, the other a question of statutory construction or

5    general law, the Court will decide only the latter." *Ashwander v. Tenn. Valley Auth.*, 297

6    U.S. 288, 347 (1936) (Brandeis, J., concurring) (citations omitted).  *See Lyng v. Nw.*

7    *Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and

8    longstanding principle of judicial restraint requires that courts avoid reaching

9    constitutional questions in advance of the necessity of deciding them.").  We, therefore,

10   refrain from analyzing the issue under Sixth Amendment analysis when there is a statute

11   clearly authorizing this court to oversee matters that directly affect a defendant's access

12   to counsel, even when such matters extend beyond the boundaries of the district.

13        Through its detention orders, this court ordered that Defendants be provided

14   "reasonable opportunity for private consultation with defense counsel" while being

15   detained pending trial. (ECF Nos. 59, 60, 61, 62, 63, and 187).  This language tracks the

16   statutory language in 18 U.S.C. § 3142(i)(3).  Under 18 U.S.C. § 3142(i)(3), this court

17   has the statutory authority to protect the Defendants' access to counsel.  *Id.* Section

18   3142(i)(3) necessarily implicates the Sixth Amendment, which sets minimum standards

19   for attorney conduct and strategies that potentially affect the outcome of a case. "Section

20   3142(i)(3) reaches above minimum conduct affecting case outcomes and suggests how an

21   attorney-client relationship ought to proceed leading up to trial—it assumes that the

22   attorney and client will consult each other regularly and then mandates the removal of

Civil No. 3:15-cr-00075 (JAF)                                                            -17-

1   any impediment to 'private' consultations that are qualitatively and quantitatively

2   'reasonable.'"   *United States v. Rodriguez*, No. 12–CR–83S, 2014 WL 4094561, *4

3   (W.D.N.Y Aug. 18, 2014). "Consequently, compliance with Section 3142(i)(3) virtually

4   guarantees compliance with the Sixth Amendment, so long as an adequately skilled

5   attorney works in good faith to stay in touch with a client and to solicit the client's input

6   regarding trial strategy." *Id.*

7        The question before the court then is whether each of the Defendants is receiving

8   reasonable access to private consultation with his defense team.

9        The government argues that while the Defendants are in the SHU they may have

10  legal visits any day of the week, are allowed contact legal visits and unlimited and

11  unmonitored legal telephone calls, and have the ability to arrange video teleconferencing

12  calls when necessary.

13       Defendant Martínez-Hernández cites no facts demonstrating that his access to

14  counsel has been limited in any manner due to his placement in the SHU.  Instead, he

15  suggests, *inter alia*, that his prolonged confinement could potentially cause psychiatric

16  unbalance, rendering him unable to adequately assist in his defense.  As an initial note,

17  Defendant Martínez-Hernández has not set forth any factual scenario causing this court to

18  believe that he is currently experiencing any psychological effects from his placement in

19  SHU.  Furthermore, this suggestion does not relate to how his confinement in the SHU

20  affects his *contact* with his legal team.

21       Because Martínez-Hernández has failed to present any facts upon which this court

22  can determine that his access to counsel is being impeded as a result of his confinement

1    in SHU and the remainder of his complaints are not properly before this court, his motion

2    requesting an order transferring him into general population (ECF No. 336) is DENIED.

3           Defendant Ramos-Cruz's motion, following the directive of this court, outlines his

4    five "most important" concerns with the conditions of his confinement.  With respect to

5    the access to counsel, Ramos-Cruz requests that the prison allow an extended schedule

6    for in-person attorney-client consultations.  Defendant's attorneys travel from Georgia

7    and San Juan, Puerto Rico, to USP Coleman II in Sumterville, Florida, for in-person legal

8    consultations.   Under 18 U.S.C. § 3005, in a capital case, the defendant is entitled to two

9    attorneys "who shall have free access to the accused at all reasonable hours." At first

10   blush, the court sees no issue with allowing legal consultation between the hours of

11   8:00 am to 8:00 pm (except between 3:00 and 5:00 p.m. for the official count), especially

12   given the gravity of the charges against the defendant.

13          Similarly, Defendant Quiñones-Meléndez requests that legal consultation visits be

14   allowed from 9:00 a.m. up until 9:00 p.m., approximately four times per month.

15   Currently, his counsel is apparently asked to leave the premises by 3:00 p.m. Defendant

16   Quiñones-Meléndez is housed 500 miles from learned counsel and 1400 miles from local

17   counsel, making travel to the prison for in-person meetings burdensome since travel is

18   involved.[1] Extending the visiting time by six hours each visitation day would allow the

19   Defendant to meet with his defense team in a more productive manner.  Again, the court

---

[1] Some would say that these days one can travel from Puerto Rico to East coast states or from Eastern states to the prisons faster that what it may take to drive from San Juan to Mayaguez, which is less than 100 miles away.

1   sees no reason why the legal consultation hours cannot be extended given the nature of

2   the present case and the distances counsel must travel to meet with their client.

3           Defendant Mojica-Rodríguez complains generally that his assignment to FDC

4   Miami inhibits his access to counsel because of the distance counsel must travel – from

5   Baltimore, Maryland, and San Juan, Puerto Rico, to FDC Miami – in order to meet with

6   Defendant.    Defendant Mojica-Rodríguez requests that he be transferred from FDC

7   Miami to MDC-Guaynabo "so that counsel can be effective, delays minimized, and

8   evidence … can be adduced."  Defendant Rodríguez-González complains that he has had

9   difficulty arranging contact visits with his attorneys nearly every time they attempt to

10  meet with him.    USP Atlanta personnel have required counsel to consult with

11  Mr. Rodríguez-González via video monitor while speaking through a telephone, they

12  have removed him from a contact visit with an expert despite confirming these visits.

13  Next, Rodríguez-González complains that his attorneys are not being allowed contact

14  visits, but at times are required to meet with him through the use of a phone line and

15  video monitor.  Although contact legal visits are allowed, they are certainly not required

16  on every occasion in order for the defendant to communicate with his counsel.  Indeed,

17  there may be valid security reasons for limiting Defendant Rodríguez-González's contact

18  with his counsel on the particular instances cited by Defendant.  We do not know,

19  because USP Atlanta has not had an opportunity to respond to Defendant's complaints.

20          In general, the court is concerned with the possible interference with Defendants'

21  access to their defense teams.  The distance for travel by counsel, though unfortunate, is

22  not an insurmountable obstacle.    Indeed, the court is aware of the travel vouchers

Civil No. 3:15-cr-00075 (JAF)                                                      -20-

1   submitted by defense counsel.  But, the fact of the matter is that MDC-Guaynabo is a

2   small detention facility on a 100 mile x 35 mile island with a nationally known large

3   criminal/social problem. For at least two years now, MDC-Guaynabo is so overpopulated

4   that at least twice a month USDOJ aircraft transfer prisoners back and forth from the

5   mainland to Puerto Rico. There is not ample space or resources to safely and securely

6   house these moving Defendants at MDC-Guaynabo for the entire amount of time that

7   remains pending trial. We must, therefore, turn to their access to counsel where they are

8   located.

9         Defendants must be allowed contact visits with their defense teams between the

10  hours of 8:00 a.m. and 8:00 p.m. or 9:00 a.m. and 9:00 p.m., any day of the week, with

11  the exception of any necessary time for official counts.  Counsel shall provide at least

12  forty-eight hours' notice to the prison of their intended visit days to allow the prison

13  officials an opportunity to accommodate the meeting.  The court notes that it makes this

14  ruling *only* because these moving Defendants currently face the death penalty and death

15  *is* different.

16        In the event that the respective prison official determines that a contact visit is not

17  allowable on any given occasion, it must provide defense counsel with the stated reasons

18  in writing not less than twenty-four hours prior to the visit and shall provide a copy of

19  that communication to Attorney Matos.  In the event that the decision for a non-contact

20  meeting is made within the notice period, Attorney Matos and the respective prison

21  officials should make every attempt to provide alternative methods for an attorney-client

22  meeting, unless such meeting would violate BOP policies or procedures.

1    Once again, this court is not attempting to interfere with the prison administrators'

2  ability to maintain institutional security and preserve internal order and discipline, but we

3  aim to ensure the defendants access to private consultations with their defense team. The

4  Warden at each of the respective prisons shall comply with this Order under the penalty

5  of personal sanctions.

6                              **Discovery View – DVD and CD Equipment**

7    Many of the Defendants complain that they are unable to view the discovery

8  materials because the video and audio evidence against them is contained in formats that

9  are unreadable on standard and available equipment.  However, this issue has since been

10  settled. On September 16, 2015, the court-appointed Coordinating Discovery Attorney

11  requested funds allowing her to transfer the previously non-viewable evidence into a

12  format that will be accessible both on counsel's computers and on facility computers for

13  the Defendants' review.  (ECF No. 861).  This court granted the request.  (ECF No. 865).

14  Accordingly, this issue is presently moot.

15                                          **Mitigation Evidence**

16    Each of the moving Defendants state that the limitations placed on them by their

17  placement in the SHU, along with their detention in facilities outside of Puerto Rico,

18  inhibit their abilities to communicate with their families, thereby preventing them from

19  developing mitigation evidence.

20    Although the court is sympathetic to the difficulties that being placed in a facility

21  off the island has on the Defendants' abilities to see their families, as long as they can

Civil No. 3:15-cr-00075 (JAF)                                                      -22-

1   communicate with their counsel, they are able to develop mitigation evidence.  The fact

2   that a defendant's family cannot afford to visit a defendant is not of constitutional import.

3          Given the court's order requiring expanded hours for attorney visits, the court sees

4   no impediment to developing mitigation evidence.  The suggestion that this evidence may

5   only be developed through personal visits by family members with the accused is

6   unsupported by any legal theory or factual argument.  Certainly the accused is in a

7   position to provide details to counsel regarding this alleged mitigation evidence and no

8   one has suggested that counsel lacks the ability to follow up on the island, in person, with

9   these family members.  As such, there is nothing about the housing of the defendants that

10  is interfering with their ability to develop evidence of mitigation.[2]

11                                              **Conclusion**

12         For the aforementioned reasons, Defendant Oscar Martínez-Hernández's motion

13  (ECF No. 336) is DENIED; Defendant Angel Ramos-Cruz's motion (ECF No. 395) is

14  GRANTED IN PART; Defendant Juan Quiñones-Meléndez's motion (ECF No. 772) is

15  GRANTED IN PART; Defendant Orlando Mojica-Rodríguez's motion (ECF No. 471) is

16  GRANTED IN PART; and Defendant Jayson Rodríguez-González's motion (ECF

17  No. 793) is GRANTED IN PART.

18         To facilitate the Wardens' notice of and compliance with this Order, the court has

19  prepared ADDENDUM A, which includes the requirements set forth above.  Counsel for

---

[2] Additionally, four of the moving defendants are currently serving sentences unrelated to the present indictment. This court does not have the authority to direct the BOP where to place a convicted individual.  18 U.S.C. § 3621(b).

Civil No. 3:15-cr-00075 (JAF)                                    -23-

1   the defendants shall provide copies of this ORDER, including Addendum A, to Attorney

2   Matos and the Wardens of the respective prisons where their clients are located.

3       Defendant Quinoñes-Meléndez moved to restrict his request for removal from the

4   SHU. (ECF No. 771).   Defendant Rodríguez-González moved to restrict his request

5   regarding the conditions of confinement to case participants only. (ECF No. 792).   We

6   see no reason why these documents and this Memorandum Order should be restricted as

7   of today.    Accordingly, Defendant Quinoñes-Meléndez's motion to restrict (ECF

8   No. 771) is DENIED, the court's Order at ECF No. 796 is VACATED, and Defendant

9   Rodríguez-González's motion to restrict (ECF No. 792) is DENIED.   The Clerk is

10  instructed to make ECF Nos. 772 and 793 viewable to the public.

11      **IT IS SO ORDERED.**

12      San Juan, Puerto Rico, this 15th day of October, 2015.

13                                      S/José Antonio Fusté
14                                      JOSE ANTONIO FUSTE
15                                      U. S. DISTRICT JUDGE
16