UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

v.

OSCAR MARTINEZ-HERNANDEZ, et al.,

Defendants.

Criminal No. 3:15-00075 (JAF)

## **OPINION AND ORDER**

Defendants have moved the court to rule that the imposition of capital punishment on a Puerto Rico resident for a crime against another Puerto Rico resident violates the Eighth Amendment to the United States Constitution and also the Federal Relations Act, 48 U.S.C. § 734. (ECF No. 1205.) We deny the motion in full.

"[I]t is settled that capital punishment is constitutional" and that the prohibitions of the Eighth Amendment cannot be used to "effectively outlaw the death penalty altogether." *Glossip* v. *Gross*, 135 S. Ct. 2726, 2732-33 (2015). It is also settled that "[t]he death penalty is intended to apply to Puerto Rico federal criminal defendants just as it applies to such defendants in the various states." *United States* v. *Acosta-Martinez*, 252 F.3d 13, 20 (1st Cir. 2001). Defendants' shopworn arguments to the contrary have some surface appeal, and this court even sympathizes with some of them, but they have no legal purchase whatsoever. After all, their main contention "is a political one, not a legal one." *See id.* at 21.

Defendants claim that the death penalty under federal law is "bereft of moral and political legitimacy" in Puerto Rico because United States citizens residing here cannot vote for federal legislators and often have strongly divergent policy preferences. (ECF No. 1205

at 11.) This is an argument against not only the application of the death penalty in Puerto Rico, but against the application of all federal law in Puerto Rico. The unfortunate fact that citizens here cannot vote for federal legislators does not offend the Constitution, however, since this situation "is what the Constitution itself provides." *Igartúa* v. *United States*, 626 F.3d 592, 597 (1st Cir. 2010); *see* U.S. Const. art. I, § 2, cl. 1; *id.* art. XVII. If anything, defendants get the argument backward because "it would be anomalous for Congress to grant the people of Puerto Rico American citizenship and then not afford them the protection of the federal criminal laws." *Acosta-Martinez*, 252 F.3d at 21 (affirming constitutionality of applying federal death penalty in Puerto Rico). In the end, there is no Eighth Amendment issue here. After all, no one disputes that foreigners, who cannot vote in federal elections no matter where they live, are legally subject to the death penalty in the United States. *See*, *e.g.*, *Medellin* v. *Dretke*, 544 U.S. 660, 674 (2005) (O'Connor, J., dissenting) (observing that, as of February 2005, "119 noncitizens from 31 nations were on state death row.")

Next, defendants argue that the English-language requirement for federal jurors, pursuant to 28 U.S.C. § 1865(2) and (3), results in "a jury composed solely of the Island's socioeconomic, educational, racial, and ethnic elite . . . which makes it far less likely that the punishment will reflect the values of the people or that the jury as a whole will reflect the community's sense of justice." (ECF No. 1205 at 20-21.) This is a Sixth Amendment fair cross-section claim repackaged under the Eighth Amendment. Although defendants aver that they are not "rais[ing] here a fair cross-section or equal protection claim," they pivot, only two paragraphs later, to *Lockhart* v. *McCree*, 476 U.S. 162 (1986), to explain "the purposes of having juries selected from a fair cross-section of the community and not, as here, a mere slice of the community." (ECF No. 1205 at 15-16.) The First Circuit Court of Appeals has

"repeatedly upheld the English proficiency requirement against such challenges in Puerto Rico district court." *United States* v. *Fernández-Hernández*, 652 F.3d 56, 66 (1st Cir. 2011) (citing cases).  There is no Eighth Amendment issue here, either.  If an English-proficient jury in Puerto Rico is "impartial" under the Sixth Amendment, there is no reason why an otherwise legal capital sentence meted out by such a jury would suddenly become "cruel and unusual" under the Eighth Amendment.

Moreover, the record shows that the effect of the English-proficiency requirement on the venire is not as stark as defendants asseverate.  According to the declaration of their own expert, of the potential jurors who return qualification questionnaires in this district, 49.62% claim not to speak English.  (ECF No. 1205-1 ¶¶ 5, 12.)  In Adjuntas, a small mountainside community with the lowest median income on the island, 56.48% of potential jurors report that they do not speak English.  Meanwhile, in Guaynabo, a San Juan suburb with the highest median income, 44.62% of potential jurors report the same.  (ECF No. 1205-1 ¶ 17.)  That is a difference of less than twelve percentage points – hardly grounds for alleging that entire regions and classes of people are unrepresented.  Defendants' expert reports that the non-response rate to the qualification questionnaire is three to four times higher in Puerto Rico than is average in the United States.  (ECF No. 1205-1 ¶ 6.)  He then speculates that this non-response rate "may well be" because the questionnaire and cover letter are in English.  (ECF No. 1205-1 ¶ 7.)  But, Puerto Rico also has a notoriously high non-response rate vis-à-vis the rest of the United States when it comes to the payment of income taxes.  No one would dare to suggest that the reason why is because the forms of the local Department of the Treasury are typically in Spanish.  Thus, without more, the expert's opinions are clearly speculative.

Defendants also maintain that "[i]nternational custom and law" prohibit a "mother country[]" with "colonies" from "impos[ing] the death penalty on the[ir] unrepresented populations for crimes committed within their native territories." (ECF No. 1205 at 22-23.) Defendants' use of these terms is quite fuzzy. Their evidence is even fuzzier. For example, they argue from the example of France and its overseas territories, without noting that the French Constitution explicitly prohibits the death penalty *everywhere*. *See* Fr. Const. art. 66-1. Defendants do not cite any treatise or case recognizing this alleged norm, and they point to only the alleged practice of China toward Hong Kong and Macau without any discussion of the reasons – whether they be normative or political – for the practice. In sum, even if we were to accept the controversial practice of construing the Eighth Amendment in light of foreign legal norms, defendants fail to prove the existence of any relevant norm.

Finally, defendants recognize that their claim under the Federal Relations Act, 48 U.S.C. § 734, is foreclosed by First Circuit precedent. (ECF No. 1205 at 28, citing *Acosta-Martinez*, 252 F.3d at 17-20.) We will only add that if the United States government were to voluntarily accept defendants' position and apply the death penalty in Puerto Rico only when the defendant or the victim is not a Puerto Rico resident, the defendants in those cases would have a clear Equal Protection claim against the enforcement of that discriminatory policy.

We hereby **DENY** defendants' motion to hold that the federal death penalty is invalid in Puerto Rico when applied to a resident of Puerto Rico. (*See* ECF No. 1205.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 1st day of April, 2016.

<u>S/José Antonio Fusté</u>
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE