# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff<br><br>v.<br><br>OSCAR MARTINEZ-HERNANDEZ (01)<br><br>Defendant | CRIMINAL NO.: 15-0075 (GAG) |

**MOTION IN LIMINE TO EXCLUDE EVIDENCE OF OTHER CRIMES,
WRONGS OR ACTS UNDER FRE 404(b) AND FRE 403**

TO THE HONORABLE COURT:

**COMES NOW**, the defendant **Oscar Martinez Hernandez** represented by the undersigned court-appointed defense counsel, and hereby respectfully **STATES** and **PRAYS** as follows:

## I.   INTRODUCTION

1. The prosecution has filed motions (at D.E.'s 1281 and 1610) identifying certain evidence it seeks to have admitted pursuant to Rule 404(b) F.R.Ev. This Court ruled, almost a year ago, that "if this case proceeds to trial then the Court will address the matter" because the case was then still in the death-penalty certification process (D.E. 1464). The case is no longer in that process, and is progressing towards trial, for sure at least with respect to Mr. Martínez.

2.  As shown below, the Court must bar the prosecution from presenting evidence of any of Mr. Martínez' prior convictions proposed in D.E.'s 1281 and 1610 in the prosecution's case in chief, in general because they are both too remote in time and not sufficiently similar to be probative of his guilt here. *See, United States v. Fields*, 871 F.2d 188, 197 (1st Cir. 1989); *United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir. 1996).

3. And should the Court conclude that any prior conviction may be relevant to one of the purposes permitted by Rule 404(b), its probative value is substantially outweighed by the danger of unfair prejudice under Rule 403. *See, United States v. Varoudakis*, 233 F.3d 113 (1st Cir. 2000).

## II. FACTS

4. The indictment charges Mr. Martínez Hernández in all six counts, essentially with participating in a plot to murder a federal officer on account of the performance of his duties and related charges. To the extent it specifies anything about Martinez' participation, it alleges that he was involved in its planning and payment after the fact, while others carried it out (indictment, D.E. 3, at page 4, ¶¶ 1-3, page 5 ¶¶1-3).

5. As best as it can be discerned from the discovery produced, the evidence against Mr. Martínez consists largely of jailhouse gossip, much of which the prosecution seeks to admit under F.R. Ev. 801 (d)(2)(E).

6. There is not much else. For sure, the prosecution will pull out even more jailhouse gossip and fragments of inmate banter between Mr. Martinez Hernández and others and proffer incriminatory interpretations, but in essence, the jury's task will essentially be to determine how much of the gossip to believe, and what the banter means.

7. Enter Rule 404(b) of the Federal Rules of Evidence. On February 20 and November 1, 2016 (D.E.'s 1281 and 1610) the prosecution filed notices advising that it intends to avail itself of that rule in order to inform the jury that Mr. Martínez has: (a) prior drug trafficking convictions, (b) two first degree murder convictions, and possibly (c) violations of Puerto Rico's weapons law. With respect to Mr. Martínez, it relies first on the convictions listed as "Special Findings" in the indictment (see D.E 1610 at p. 3-4).

2

8. These are described in a manner so generic that it is less than clear exactly which convictions are referred to. While D.E. 1610 identifies some offenses by docket/case number, others are not specifically identified and, as things stand, the notice is insufficient to inform the defense and the Court what exactly it proposes to introduce in evidence in relation to each prior bad act. The defense cannot prepare, and the Court cannot rule in a vacuum.

9. In order to facilitate the Court's decision on this motion and avoid unnecessary surprise and delay at trial, Mr. Martinez requests an order that the prosecution present this evidence in its response to this motion, filed for participants only. This motion is predicated on what the defense understands from the current pleadings may be the information the Government seeks to convey to the jury under Rule 404(b), without prejudice to any objection it may have to specific evidence, should any be permitted.

### III. THE CONVICTIONS

10. The convictions referred to in D.E. 1610 appear to be (a) those referenced in the Special Findings ("two First Degree Murders, weapons violations and drug offenses" comprised of case numbers VI 98G0005-0006 as a result of events on July 17, 1997 (D.E. 1610 at p. 3-4) and federal drug conspiracies with docket numbers (94-214 and 01-379), before this court. It also references local drug and weapons charges without specific identification.

11. Two things are immediately apparent: first, all the offenses relied upon took place between 17 and 20 years ago, the most recent, 13 years before the events in this case. Second: the only offense of violence occurred almost 20 years ago, and, as discussed below, was a single incident involving two deaths, not two separate murders.

12. The prosecution's memorandum generically asserts that "the special probative value of

3

the proposed evidence is clear" because the prior bad acts "involve all the Defendants, and together demonstrate their ability to plan and execute murders for hire." D.E. 1610 at p. 18. It simply asserts that because "all are charged with conspiracies to commit murder and murder for hire, the proposed evidence is highly probative of each Defendant's knowing and intentional participation in those conspiracies." *Id.*

13. As illustrated below, this broad statement is (a) not true as to Mr. Martínez and (b) is far from adequate to support the admission of such generally inadmissible evidence. In arguing that the prior acts are offenses similar to those charged here and involved "the same participants" (*Id.*), the prosecution is, if not over-reaching, overgeneralizing. Its 21page memorandum recites a dizzying number of murders committed by defendants 7-9, some with the collaboration of additional defendants, *but none with Mr. Martínez.*

14. To the extent it asserts any particular purpose for this evidence with regard to Mr. Martinez (referencing "defendants 1-3" collectively), the prosecution proffers it to rebut an argument not made: that they will "argue that they could not possibly have known of or participated in the charged offenses due to their incarceration," and that the prior convictions will be relevant to show "opportunity and knowledge." D.E. 1610 at p. 19.

15. First, the prosecution has no need to rely upon inferences from remote convictions to show that the incarcerated defendants had the relevant opportunity. It posits that the murder was motivated by Lt. Albarati's confiscation of cell phones from them. D.E. 1610. That is direct evidence of opportunity and precludes a defense based upon lack of knowledge of his status as a federal official. The prosecution may not introduce evidence with a high likelihood of unfair prejudice in anticipation of an argument that is not likely to be made. Should it be, it would have an

opportunity to offer it in rebuttal.

16. Second, the prosecution argues that the prior convictions demonstrate "Defendants' abilities to obtain resources and orchestrate the actions of their co-conspirators" and to run their DTOs while incarcerated. But this assertion does not at all follow. Two decades-old murder convictions do not prove an ability to run a drug organization while incarcerated. The question may be posed as follows: how does a conviction for participating in a drug trafficking offenses in the past while living in the free community prove that Martinez had the ability to run an ongoing organization from jail in 2013? The prosecution has designated no evidence, and presented none in discovery, to show that Mr. Martínez "was the head of" a drug trafficking organization which [as it posits, he] continued to direct from inside MDC via cell phone. Cell phones do not a DTO make. If the prosecution intends to pursue this theory, it must designate relevant evidence of any ongoing drug trafficking by Mr. Martínez. To date, it has failed to do so.

17. Out of an abundance of caution, and because the prosecution has relied upon vague and general allegations without specifying the purpose for which it seeks to rely upon each conviction, in addition to the foregoing argument, each is analyzed for possible relevance to one of the permissible purposes below.

**THE PRIOR CONVICTIONS ARE REMOTE IN TIME AND DISSIMILAR**

**A. The remote drug convictions (1992, 1994, 2000)**

18. **MOTIVE**: The murder of a prison official in 2013 could not have been motivated by remote drug convictions. There is simply no logical leap that would allow the jury to conclude that Mr. Martinez was involved in Lt. Albarati's murder because of those earlier convictions, or to conclude that because he was involved in drug trafficking in 2000, he had a motive to murder Lt.

5

Albarati in 2013.

19. Furthermore, according to the discovery tendered, the prosecution's proof of motive will rely on the uncontested fact that Mr. Martínez was in a prison in which Lt. Albarati conducted shake downs on him and numerous other inmates who used cell phones and obtained contraband, ranging from drugs to sardines. The confiscation of cell phones and contraband itself may provide a motive for the murder. Surely not all those who had cell phones confiscated were leaders of DTOs, and many of those who were leaders of far more recent DTOs, housed at MDC at the same time as Mr. Martínez (e.g., those charged in 12-200 the "ONU" case) were not charged here. The logical thread between remote drug trafficking and the murder of a prison official is too tenuous to justify introduction of these convictions and the prosecution has no need to resort to remote convictions for unrelated offenses to show motive.

20. **OPPORTUNITY**: Here again, the prosecution cannot overcome the obstacles of remoteness and lack of logical connection. The relevant "opportunity" to commit this offense must be proven by objective contemporaneous circumstances. Discovery suggests that the prosecution will have little difficulty using contemporaneous records to show that Mr. Martínez (and myriad others) did not lack opportunity. They were housed at MDC, which was riddled with contraband cell phones, drugs and corrupt guards as well as scores of defendants who had played major roles in ongoing or recently dismantled warring drug conspiracies. The fact that Mr. Martínez was lodged among them, physically present at MDC, shows opportunity. His convictions for drug-related offenses well over a decade earlier are simply irrelevant to opportunity.

21. **INTENT**: This indictment does not charge any possessory offenses (e.g. firearms, drugs) where ignorance or lack of intent can be claimed by the defendant. The offenses charged require

6

specific intent. Prior drug convictions shed no light on the intent required here. The circumstances and the nature of Martinez' alleged participation (planning, funding), eliminate mistake or lack of intent to kill an official on account of his responsibilities as defenses, as does the nature of defendant's alleged participation. The intent that must be proved requires specific knowledge and intent relating to contemporaneous facts. Not remote ones regarding unrelated offenses.

22. **PREPARATION**: Any preparation for the offenses charged could not have happened before Mr. Martínez arrived at MDC, well over a decade after these offenses. For that reason alone, they are irrelevant.

23. **PLAN:** Likewise, no plan could have been hatched before any encounter between Mr. Martínez and Lt. Albarati. The indictment charges planning between February 1 and 26, 2013, making the remote drug offenses irrelevant.

24. **KNOWLEDGE**: See paragraphs 22 and 23, above. Evidence of prior crimes committed with codefendants may be relevant in a conspiracy to show their knowledge of each other created a basis for their mutual trust. *United States v. Escobar de Jesús*, 187 F.3d 169 (1st Cir. 1999); *United States v. Vizcarrondo Casanova*, 763 F.3d 89 (1st Cir. 2014). But here, while there may be facts to support that use of some evidence for some of the defendants, none has been proffered for *Mr. Martínez*.

25. A relatively recent but prior murder for hire conviction would show a defendant had the connections i.e., knew people who know how to do such things. But even if Mr. Martínez' 1992 convictions were for some similar offense (they were not), the passage of time would have worn the inference that this knowledge remained of value, to the vanishing point. As it is, whatever knowledge Martinez gained some 20 years earlier from selling drugs or handling weapons was useless in the

7

plot charged in the indictment, where, according to the indictment and discovery, others used contemporaneous knowledge to arrange and carry it out. *See*, *e.g.*, D.E. 3 at p. 4 ¶50 p. 5 ¶6 and "Overt Acts" 5-8.

26. **IDENTITY**: When a prior conviction reveals commission of a similar act by means so similar they support an inference of a common author *(e.g.*, a bank robber who leaves identical or similar notes, carjackings carried out by two men and a woman who intercept vehicles at gas stations and assume similar roles in different incidents), the prior conviction may point to the identity of an unknown perpetrator.

27. But neither of the prior offenses points to Mr. Martínez as the author or financier of this one. *See, e.g., United States v. Apolon,* 715 F.3d 362, 373 (1st Cir. 2013)(use of similar real estate scheme with regard to uncharged properties involving the same conspirators in the same roles "within the same time frame" as those charged was probative of intent and knowledge of the fraud). The cited drug offenses are neither within the same time frame nor remotely related to the offense charged here so as to permit a logical inference that the person who committed the drug offenses is probably the one who organized or paid for the murder for hire.

28. **ABSENCE OF MISTAKE OR ACCIDENT**: See paragraphs 22-24 above. Mr. Martínez is charged as a planner and/or financier. This takes mistake and accident off the menu of potential defenses, so the prosecution may not rebut this non-existent defense in its case in chief. Of course, should anything happen that would allow such a defense to surface, it could propose any relevant conviction, assuming there was one, in rebuttal. However, it is hard to see how prior drug and weapons convictions could do so. As the case stands, they can add nothing of relevance, much less "special relevance" to either the prosecution or the defense.

### B. The remote murder and weapons convictions

29. These are the result of an incident on July 15, 1997 (VI98G0005 and 0006). The allegations in that prior case are that of the shooting death of two individuals, allegedly at the hands of Martinez and another alleged accomplice, where, one of the victims, according to evidence heard at trial, controlled a drug point in Barriada San José, Manatí, Puerto Rico. The alleged shooting, according to the record, takes place in or near the drug point in Barriada San José. The allegation is that Mr. Martinez was personally involved and shot the two victims. Assuming for the sake of argument the circumstances of these alleged events occurring in 1997, it is safe to say that there is nothing about either of these convictions that is logically tied to the commission of the offenses charged here, two decades and more later.

30. **MOTIVE?:** Surely not. Javier Marías wrote a haunting story about a young woman who, decades later, tracked down and killed her Republican father's assassin at the hands of Franco's militia. One murder may cry out for vengeance after decades, but the indictment charges a murder motivated by ongoing, not historic events. The discovery produced, including grand jury testimony, makes it clear that the prosecution's theory is that the motive was to keep Lt. Albarati from doing his job, and perhaps revenge by some who felt insulted by his treatment of inmates. Whatever theory is presented at trial in the instant case, same cannot be supported in any way with alleged events transpiring in 1997, in a context totally dissimilar to the case at bar.

31. **OPPORTUNITY:** See paragraph 20 above. The opportunity must have occurred between February 1 and 26, 2013, not in the 1990s. Surely there is no inference that because he possessed a firearm in 1992, he knew where to get them. Rather, the discovery shows that others did,

9

and that he had nothing to do with the acquisition or use of firearms in 2013.

32. **INTENT:** See paragraph 21 above.

33. **PREPARATION:** See paragraph 22 above.

34. **PLAN:** See paragraph 23 above.

35. **KNOWLEDGE:** See paragraph 24 above. While in some cases the commission of a prior murder may show knowledge of how to carry out that offense, the difference between being a shooter (as alleged) and the planner/financier of a murder for hire makes knowledge of the first essentially irrelevant to the second. The knowledge required here has nothing to do with the alleged manner and means of the crime object of the 1997 murder case.

36. **IDENTITY:** See paragraph 26 above. While the statutory offenses carry the same title, there is insufficient similarity between the offenses for which Mr. Martínez was sentenced almost two decades ago and the one charged in the indictment to permit a jury to conclude that they must have had the same author. It involved none of the current codefendants or murder for hire or federal officials.

37. **ABSENCE OF MISTAKE OR ACCIDENT:** See paragraph 28 above. In addition of all the remote convictions the prosecution proffers, this one carries the highest risk of unfair prejudice because of the nature of the offense and their superficial similarity. Prosecutors, defense attorneys and judges are accustomed to distinguishing between one murder and another. Lay people are not, and the instinctual moral revulsion they provoke is comparable to few others.

### IV. MEMORANDUM OF LAW

38. As illustrated above, for the convictions it seeks to introduce, the prosecution cannot meet the burden of ordinary relevance, much less any of the terms of "special relevance" required by Rule

404(b). It merely hopes to use that Rule as an all-purpose shield against the prohibition against character evidence, to plant the seed that, because Mr. Martínez has prior convictions, including for murder, weapons and drugs, he was probably involved in this plot and/or deserves to be punished– i.e., not entitled to the benefit of a reasonable doubt.

39. This Court is his bulwark against such end-runs around the Constitution. At this juncture, it can review the positions of the parties and any relevant documentation in the light of the relevant rules and decisions and make a reasoned decision that will protect his rights, streamline the presentation of evidence, and avoid exposing the jury to highly prejudicial, irrelevant information.

**NO GENERAL RELEVANCE**

40. Even leaving aside, for the moment, the prohibition on character evidence in Rule 404(b), Rule 401 bars the introduction of evidence not relevant to the jury's determination of proof beyond a reasonable doubt of the charged offenses.

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, F.R.Ev.

None of the prior convictions is "of consequence" to the determination of guilt on these charges because there is no logical link between the fact of the prior conviction and the likelihood that the same person planned and/or financed the offenses charged here.

**RULE OF EXCLUSION**

41. As Justice Breyer noted, when serving on the First Circuit,

> "This rule codifies the common law doctrine forbidding the prosecution from asking the jury to infer from the fact that the defendant has committed a bad act in the past, that he has a bad character and therefore is more likely to have committed the bad act now charged". *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982).

42. Rule 404(b) codifies this centuries-old tradition of, as Chief Justice Jackson wrote in *Michaelson*, "taking character off the table" ( *Michelson v. United States* 335 U.S. 469 (1948) ] [335 U.S. 469 , 470) is of no help to the prosecution because it is a general rule of exclusion, textually prohibiting precisely what it seeks to do here. It provides, in pertinent part:

> **Crimes, wrongs or other acts**
>
> *(1) Prohibited uses*: Evidence of a crime, wrong, or other at is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> *(2) Permitted uses; Notice in a criminal case*
> This evidence may be admissible for other purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or lack of accident.

## NO SPECIAL RELEVANCE

43. As detailed above, none of the prior convictions meet any of the conditions of "special relevance" under which other crimes "may" (if they pass the test of Rule 403) be introduced for a specific purpose. Contrary to the assertions in D.E. 1610 the prior bad acts alleged against Mr. Martínez do not involve "all the defendants" and show nothing about his "ability to plan and execute murders for hire." None of the evidence heard in the state level murder trial, bears upon or makes more likely that over 15 years later, while in prison, Martinez could plan or pay for or execute a murder for hire.

44. The prosecution's speculation that Mr. Martínez would argue that he could not be found guilty because, as a prisoner, he was incapable of committing the charged offenses (D.E. 1610 at 19) underestimates the intelligence of the defense. The indictment makes clear that he is not charged as a shooter, and, together with the discovery, makes clear that the prosecution has no need to prove that he was in a position to shoot, or had to be on the street to carry out the actions the prosecution

12

alleges.

45. The argument that "the proposed evidence illustrates the efforts of defendants 1-3 to "run their DTOs while incarcerated" falls flat as to Mr. Hernández. It shows he once participated in one, but past convictions do not suffice to show current "efforts . . . to run [a] DTO while incarcerated." Such an inference can only come from evidence related to acts while incarcerated and continuity of relationships with those involved in prior conspiracies. None have been cited. Past convictions may not be used to fill any gaps created by the absence of evidence as to participation in drug trafficking in 2013.

**RULE 403 PREJUDICE, CONFUSION AND WASTE OF TIME**

46. While the defense believes the Court need not reach this issue because the evidence of prior convictions is (a) not relevant, (b) prohibited by Rule 404(b)'s general prohibition and does not qualify for any of the exceptions for "special relevance," in the interests of completeness, the issue of its admissibility pursuant to Rule 403, F.R.Ev. mandates the exclusion of proof of the prior convictions. That is, even assuming, *arguendo*, some marginal relevance, it would be outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. FRE 403 provides as follows:

> **"Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons.**
>
> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence".

47. District Courts are charged with excluding even relevant evidence when whatever probative value it may have would be "substantially outweighed" by the danger of unfair prejudice,

13

among others.

**THE PROSECUTION'S THEORY**

48. It has long been the rule in this Circuit that evidence which the prosecution seeks to introduce pursuant to Rule 404(b) must pass a two-step process. *United States v. Varoudakis*, 233 F.3d 113, 118 (1st Cir. 2000). First, it must pass the "special relevance" test without including an inference of bad character in the chain of reasoning. *See, e.g., United States v. Landry*, 631 F.3d 597 (1st Cir. 597, 601-02 (1st Cir. 2011).

49. If the proffered evidence has "special relevance," it is nonetheless inadmissible if its probative value is "substantially outweighed by the danger of," among other things, "unfair prejudice, confusion of the issues, or misleading the jury." *United States v. Aguilar Aranceta*, 58 F.3d 796, 798 (1st Cir. 1995). If the danger of prejudice outweighs its evidentiary value, what ever that may be, it must be excluded as unfairly prejudicial. *Id.*, quoting *United States v. Frankhouser*, 80 F.3d 641, 648 (1st Cir. 1996).

50. Unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States,* 519 U.S. 172 (1997)(error under Rule 403 to reject stipulation and insist upon presenting facts of prior conviction to prove felon-in-possession charge). And see, *Moccia, supra*.

51. While the Court of Appeals defers to the discretion of district courts, which, in turn, sometimes defer to the prosecution's judgment of how much evidence of what kind it needs to carry its burden, the First Circuit has also repeatedly called attention to "the folly of bad act overkill." *United States v. Arias Montoya*, 967 F.2d 708, 714 (1st Cir. 1992). To little avail. *See, e.g, Frankhauser, supra* at 650 ("once again" calling attention to "the folly of bad act overkill"), *United*

*States v. Vizcarrondo Casanova*, 763 F.3d 89, 94 (1st Cir. 2014)(finding something close to overkill, but sufficient special relevance to show why, contrary to the way we normally think things work, police officers would trust violent criminals) and *vice versa*.

    52. The First Circuit held in ***Frankhauser:***

> "Our most serious concerns rest on the Rule 403 side of the scale. "If the evidence brings unwanted baggage, say, unfair prejudice or a cognizable risk of confusing the jury, and if the baggage's weight substantially overbalances any probative value, then the evidence must be excluded." Aguilar-Aranceta, 58 F.3d at 800 (internal quotation marks and citations omitted). The author of this opinion believes that although the LaRouche evidence was probative in theory, the use and extent of it "progressed well beyond the necessary," United States v. Pratt, 73 F.3d 450, 452 (1st Cir. 1996), and that this raised a threat of confusion and unfair prejudice."

    53. Furthermore, remoteness in time and similarity between the prior offense and the instant one are critical factors in deciding admissibility under Rule 404(b). *Frankhauser, supra* at 648; *United States v. Fields*, 871 F.2d 188, 197 (1st Cir. 1989)("Probative value 'must be considered in light of the remoteness in time of the other act and the degree of resemblance to the crime charged"). Remoteness decreases the probative force of evidence, especially to prove motive, opportunity, intent, and preparation. Lack of similarity decreases the probative force of prior acts to prove plan, knowledge, and identity. Absence of mistake and accident are simply irrelevant here.

    54. Other circuits agree. In the Sixth, "Regarding the nearness in time question, the rule is that the prior conduct must be reasonably near in time under the facts of the particular case." *United States v. Ismail*, 756 F.3d 1253, 1260 (6th Cir. 1985). The Eighth Circuit has adopted a rebuttable presumption that acts thirteen or more years prior are too remote. *See, e.g., United States v. Aldridge*, 664 F.3d (8th Cir. 2011).

55. In the Eleventh, remoteness, although not numerically defined, is a threshold requirement. *See, e.g., United States v. Matthews*, 431 F.3d 1296, 1311 (11th Cir. 2005)(22 year old drug conviction too remote and too dissimilar when it involved a street-level sale of marijuana and the current charge international conspiracy to distribute 153 kilograms of cocaine, roles in the two offenses were significantly different).

## V. CONCLUSSION

56. "Progress well beyond the necessary" is what the Government will accomplish by introducing at trial the extrinsic evidence of the remote drug, weapons and murder convictions, even if in theory it could be found to have some legitimate probative value, which again, we submit that it does not; the unwanted baggage of propensity to commit deviant acts will be imprinted in the jury's mind, notwithstanding the court's instructions to the contrary. The prejudice will be obvious and great, not to mention perfectly avoidable.

57. Therefore under a ***FRE 403*** analysis, the scant probative value will be outweighed by substantial prejudice it will cause, which warrants that the extrinsic evidence previously mentioned be excluded from trial, even if found to somehow be "specially relevant", which again, we submit it is not.

**WHEREFORE**, it is respectfully requested from this Honorable Court to enter an order excluding the extrinsic evidence as requested herein.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 27th day of April, 2017.

**CERTIFICATE OF SERVICE**:I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send notification to all counsel of record.

**S/JOSE LUIS NOVAS DEBIÉN**
**USDC-PR #213905**
PMB 382
Calaf 400
San Juan, Puerto Rico 00918
Tel.: 787-754-8300
Cel.: 787-640-2174
Fax: 787-766-3221
E-mail:jnovas1@gmail.com